UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BLISS TRADEMARK HOLDINGS, LLC,

                Plaintiff,

         -against-                          25-cv-1763 (LAK)

BLISSY, LLC,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

        John Paul Mixon
        Bruce Ewing
        DORSEY & WHITNEY LLP
        *Attorneys for Plaintiff*

        Karl Stephen Kronenberger
        Kelly Mulcahy
        Virginia Anne Sanderson
        KRONENBERGER ROSENFELD, LLP
        *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        According to new age guru and author Deepak Chopra, "Bliss is not a feeling but a state of being."[1]  Plaintiff Bliss Trademark Holdings, LLC ("Bliss") takes a different view — Bliss is not a state of being, but an inherently distinctive trademark.  Defendant Blissy LLC ("Blissy") naturally disagrees, arguing that plaintiff's trademark infringement and related claims should be

---

[1]       Deepak Chopra (@DeepakChopra), Facebook (Aug. 19, 2010), https://www.facebook.com/DeepakChopra/posts/145929662094737.

dismissed.

### *Background*[2]

The "Bliss" brand originated as a spa in New York City in the 1990s. Since then, the Bliss brand has been used in connection with skincare products ("Bliss Products") sold at spas and major retail chains.[3] Bliss Products are marketed and sold under marks that "predominantly consist of the word 'bliss' in all lowercase, sans-serif font displayed most often either in distinct light-blue-colored lettering, or in white lettering against a distinct light-blue-colored background" ("Bliss Marks").[4] The U.S. Patent and Trademark Office ("PTO") has granted six federal trademark registrations covering Bliss Marks in connection with a variety of skincare products.[5]

Bliss alleges that Blissy was formed in 2019 and soon thereafter began selling sleep-related products and beauty accessories, including its flagship product, a silk pillowcase ("Blissy Products").[6] The Blissy Products are marketed and sold under marks that consist of the word blissy "in an all lowercase, sans-serif font either in white lettering against a blue background

---

[2]

At this stage, the Court assumes the truth of the well-pleaded factual allegations of the Complaint and draws all reasonable inferences in the plaintiff's favor. See *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019).

[3]

Dkt 1 ("Compl.") ¶ 14.

[4]

*Id.* ¶ 17.

[5]

*Id.* ¶ 18.

[6]

*Id.* ¶ 20.

or in blue lettering" ("Blissy Marks").[7]  In April 2020, the PTO granted a federal trademark registration covering the use of a Blissy Mark in connection with a silk pillow case.[8]

Bliss alleges that the Blissy Marks are "functionally identical" to the Bliss Marks.[9] Bliss alleges that this similarity is compounded by Blissy's marketing itself as a beauty company. For example, Bliss cites statements on Blissy's website and in social media posts touting the skincare and other beauty-related benefits of using Blissy Products.[10]

Bliss brings claims for trademark infringement and unfair competition under 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A) and  New York common law, trademark dilution under New York General Business Law § 360-1, and cancellation of Blissy's trademark under 15 U.S.C. §§ 1064 and 1119.

Blissy moves to dismiss Bliss's complaint under Rule 12(b)(6). With respect to trademark infringement and unfair competition, Blissy argues that Bliss has failed to allege a likelihood of consumer confusion between the brands' marks. With respect to trademark dilution, Blissy contends that Bliss has not adequately alleged blurring or tarnishment.  With respect to trademark cancellation, Blissy argues that Bliss's claim rises and falls with its trademark infringement claims.  Blissy further contends that Bliss's claims are barred by laches because there was an undue delay in bringing the claim. And finally, Blissy argues that, in the alternative to

---

[7]

 *Id.* ¶ 21.

[8]

 *Id.* ¶ 25.

[9]

 XX.

[10]

 XX.

4

dismissal, the Court should stay the action pending resolution of the TTAB proceedings.

## *Discussion*

### I.    *Legal Standards*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]  In deciding a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.[13]

### II.    *Lanham Act and New York Common Law Claims*

Bliss brings claims for trademark infringement and unfair competition under 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A) and  New York common law.  Courts analyze these claims by applying a two-prong test.[14]  The first prong asks whether plaintiff's mark merits protection because

---

[11]

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[12]

*Iqbal*, 556 US. at 678.

[13]

*See Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001).

[14]

*See, e.g.*, *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 440 (S.D.N.Y. 2017).  This test applies to the Lanham Act and New York common law claims, except that a plaintiff may need also to prove bad faith to prevail on a New York common law unfair competition claim.  *Id.*; *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1283 (S.D.N.Y. 1990).

5

it is distinctive and not generic, while the second prong asks whether defendant's use of the mark is likely to cause consumer confusion.[15]  Blissy concedes that Bliss has satisfied the first prong.  It disputes, however, whether Bliss has alleged adequately that the Blissy Marks are likely to cause consumer confusion.

Courts in the Second Circuit "apply the eight-factor Polaroid test to assess whether a plaintiff has sufficiently pleaded 'likelihood of confusion.'"[16]  "The eight factors are: (1) strength of the trademark; (2) similarity between the two marks; (3) proximity of the products and their competitiveness with one another; (4) likelihood the prior owner may 'bridge the gap' in the markets for their products; (5) evidence of actual consumer confusion; (6) the defendant's good faith in adopting its imitative mark; (7) quality of the defendant's product compared with the plaintiff's product; and (8) sophistication of the buyers."[17]  "The crucial issue . . . is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question."[18]

Bliss alleges the following with respect to the *Polaroid* factors:

• Strength of mark: The Bliss Marks have been in continuous use since 1996, are inherently distinctive, are protected by incontestable trademark registrations and applications, and have been the subject of major retail partnerships and media

---

[15]

Id.

[16]

*1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 247 (2d Cir. 2024) (citing *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 496 (2d Cir. 1961)).

[17]

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 136 (2d Cir. 2023) (per curiam).

[18]

*Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004).(second alteration in original) (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 46 (2d Cir. 1978)).

appearances.[19]

• Similarity between the marks: The Bliss Marks and Blissy Marks use variations of the same word (bliss), all lowercase, sans-serif font, and similar color palettes.[20]

• Proximity and competitiveness: Both companies offer beauty and skincare products, sleep masks, and hair accessories, sold through overlapping retail and e-commerce channels.[21]

• Bridging the gap: Blissy's product are highly related to and/or fall within the same categories of goods and services offered under Bliss Marks, and they fall "within Bliss' zone of natural expansion for such goods and services."[22]

• Actual confusion: Bliss does not allege any instances of actual confusion although, as the Second Circuit has noted, "actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source."[23]

• Good faith: Blissy markets its products as beauty products, evincing an intent to trade off of Bliss's brand.[24]

• Quality of defendant's product: The complaint does not allege that Blissy products are either high or low quality.

• Sophistication: The complaint makes no allegations regarding the sophistication of the relevant purchasers.

Blissy argues that the Bliss Marks are not strong because they use a common English word, and other third-party users of marks contain the word bliss in connection with similar

---

[19] Compl. ¶¶ 2, 3, 14, 18.

[20] *Id.* ¶¶ 4, 17, 21, 27, 45.

[21] *Id.* ¶¶ 16, 22–23, 28–30, 35.

[22] *Id.* ¶ 45.

[23] *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986).

[24] Compl. ¶¶ 28–34.

products.  Blissy further argues that the Bliss and Blissy brands do not compete with each other in actuality.   But these fact-specific arguments "are not properly resolved through a motion to dismiss."[25]

Taken together, Bliss has alleged sufficient facts to plead adequately the likelihood of customer confusion.  Accordingly, Bliss sufficiently has alleged claims under Sections 32(1) and 43(a) of the Lanham Act and for trademark infringement under New York common law.

Bliss' common law unfair competition claim may require an additional showing of bad faith.[26]  As set forth above, they have at least plausibly alleged the existence of bad faith on Blissy's part.  Accordingly, Bliss has alleged an unfair enrichment claim sufficiently under New York common law.

III.    *Trademark Dilution*

To state a claim for trademark dilution in violation of New York General Business Law § 360-l, a plaintiff must allege that (1) it possesses a strong mark that has a distinctive quality or has acquired a secondary meaning, and (2) a likelihood of dilution by either blurring or tarnishment.[27]

For the reasons set forth above with respect to the first *Polaroid* factor, Bliss has

---

[25]

*Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006).

[26]

*See Weight Watchers Int'l, Inc.*, 744 F. Supp. at 1283 ("Common law unfair competition claims closely parallel Lanham Act unfair competition claims; to the extent that they may be different, the state law claim may require an additional element of bad faith or intent.").

[27]

*Fireman's Ass'n of State of New York v. French Am. Sch. of New York*, 839 N.Y.S.2d 238, 242 (2007).

8

alleged plausibly that the Bliss Marks have a distinctive quality and have acquired a secondary meaning.

With respect to blurring or tarnishment, Blissy argues that Bliss "must substantiate a six-factor test, plausibly alleging  (i) the similarity of the marks, (ii) the similarity of the products covered, (iii) the sophistication of the consumers, (iv) the existence of predatory intent, (v) the renown of the senior mark, and (vi) the renown of the junior mark."[28]  But Blissy does not identify any authority supporting the need to substantiate these factors at the motion to dismiss stage.[29]  Indeed, this standard involves fact-intensive considerations that are inappropriate at this stage of proceedings.  Bliss has alleged that facts support the inferences that the Bliss Marks and Blissy Marks are highly similar and that there is competitive proximity between their respective products.  "Given the low threshold required to survive a motion to dismiss for failure to state a cause of action," these allegations are sufficient because they "'[r]aise the possibility that the mark[s] will lose [their] ability to serve as a unique identifier of [Bliss'] product.'"[30]

Accordingly, Bliss sufficiently has alleged a trademark dilution claim under New York General Business Law § 360-l.

*IV.    Trademark Cancellation*

Bliss' sixth and final claim is for trademark cancellation under 15 U.S.C. §§ 1064

---

[28]

Dkt 16 at 13–14 (citing *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 382 (S.D.N.Y. 2008)).

[29]

*See Malletier*, 561 F. Supp. 2d at 382, 392 (applying this standard at summary judgment)

[30]

*Fireman's Ass'n*, 839 N.Y.S.2d at 242 (quoting *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994)).

9

and 1119.  It concede that Bliss' cancellation "rises and falls under their trademark infringement claim."[31]  Accordingly, for the reasons listed above, Bliss sufficiently has alleged a trademark cancellation claim under 15 U.S.C. §§ 1064 and 1119.

V.    Laches

Blissy argues that Bliss' claims are barred by laches.  "Because the Lanham Act does not prescribe a statute of limitations, federal courts often 'look to "the most appropriate" or "most analogous" state statute of limitation' to determine when the presumption of laches applies to Lanham Act claims."[32]  The Second Circuit "appl[ies] New York's six-year fraud statute of limitations to determine if a Lanham Act claim is barred by the doctrine of laches."[33]

Here, the complaint alleges that Blissy first filed an application with the PTO to register the use of a Blissy Mark on March 21, 2019 based on a first use date of March 15, 2019.[34] The complaint was filed on March 3, 2025 — less than six years after the filing of the PTO application and the first use date.

Accordingly, Bliss' claims as alleged are timely and laches is not a basis for dismissal.

---

[31]    Dkt 16 at 15.

[32]    *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 745–46 (2d Cir. 2016) (quoting *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996).

[33]    *Parks v. ABC, Inc.*, 341 F. App'x 737, 739 (2d Cir. 2009).

[34]    Compl. ¶ 24.

*VI.    Stay of Proceedings*

        In the alternative to dismissal, Blissy requests that the Court stay this action pending resolution of proceedings before the PTO's Trademark Trial and Appeal Board ("TTAB").  In 2023, Blissy filed applications to register the use of Blissy Marks in connection with (1) aromatherapy sprays, laundry wash bags, hair accessories, and other similar products, and (2) silk pillowcases.[35] In response to those applications, Bliss notices of opposition before the TTAB in July and August 2024.[36]  Blissy argues that this action should be stayed until the TTAB proceedings have been resolved.

        Since the filing of Blissy's motion, the TTAB suspended the opposition proceedings pending the final disposition of this action.[37]  A stay is not warranted where the parallel proceedings are suspended pending the resolution of this case.

---

[35]

      *Id.* ¶¶ 35–36.

[36]

      *Id.* ¶ 38–39.

[37]

      Dkt 19 at 8.

### *Conclusion*

For the foregoing reasons, defendant's motion to dismiss (Dkt 15) is denied.

SO ORDERED.

Dated:       July 20, 2025

_____

Lewis A. Kaplan
United States District Judge
